UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| GEORGE K. NICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:04-cv-329 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On March 7, 2001, plaintiff filed the applications giving rise to this appeal. (A.R. 54-56, 273-77). Plaintiff alleged a February 2, 2001 onset of disability.[1] Plaintiff's claims were denied upon initial review, and under the disability redesign prototype procedure, were not subject to administrative review at the reconsideration stage. (A.R. 30, 279). On December 10, 2002, plaintiff received a hearing before an administrative law judge (ALJ) at which plaintiff was represented by counsel. (A.R. 304-50). On July 22, 2003, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 19-27).

---

[1]SSI benefits are not awarded retroactively for months prior to the application. 20 C.F.R. § 416.335; *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744, at * 2 (6th Cir. Aug. 14, 1991); *see also Romero v. Barnhart*, No. 04-2275, 2005 WL 1395100, at * 4 (6th Cir. June 14, 2004). Therefore, the question before the Commissioner on plaintiff's SSI claim was whether plaintiff was disabled in or after March 2001, not plaintiff's earlier claimed onset date of February 2, 2001.

The Appeals Council denied review on March 17, 2004 (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision. On May 18, 2004, plaintiff filed his complaint in this court seeking review of the Commissioner's decision denying his DIB and SSI claims. Plaintiff's statement of the issues on appeal is set forth verbatim below:

   A.   DID THE ADMINISTRATIVE LAW JUDGE FAIL TO COMPLY WITH 20 C.F.R. § 404.1527(d) IN NOT ACCORDING ADEQUATE WEIGHT TO THE OPINION OF KEVIN'S TREATING PSYCHOLOGIST AND IN FAILING TO CONSIDER VARIOUS FACTORS SET FORTH IN 20 C.F.R. § 404.1527(d) IN EVALUATING THE OPINION OF THE TREATING PSYCHOLOGIST?

   B.   DOES THE SUBSTANTIAL EVIDENCE OF RECORD SUPPORT THE ADMINISTRATIVE LAW JUDGE FAILURE TO FIND THAT THE CLAIMANT IS DISABLED BECAUSE HE IS UNABLE TO PERFORM BASIC MENTAL DEMANDS OF UNSKILLED WORK AS DESCRIBED IN SOCIAL SECURITY RULING 85-15?

   C.   IS THE ADMINISTRATIVE LAW JUDGE'S ASSESSMENT OF CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT SUPPORTED BY SUBSTANTIAL EVIDENCE WHEN IT IS SIMPLY CONCLUSORY AND DOES NOT CONTAIN ANY RATIONALE OR REFERENCE TO THE SUPPORTING EVIDENCE AS REQUIRED BY SOCIAL SECURITY RULING 96-8P?

(Plf. Brief at 1, Statement of Issues, docket # 8). Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*,

245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on February 2, 2001, his asserted onset of disability, and continued to meet them through the date of the ALJ's decision. Plaintiff testified that he performed intermittent painting and yard work for his friends and neighbors. Plaintiff was paid for this work, but the ALJ found that the work did not rise to the level of substantial gainful activity. (A.R. 20). The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. The medical evidence established that plaintiff had the severe impairments of " a cognitive disorder, status-post traumatic brain injury; left foot deformity; petit mal seizure disorder; and a depressive/adjustment disorder." (A.R. 23). The ALJ determined that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ found that plaintiff's subjective complaints were not fully credible, and that plaintiff retained the RFC for a range of light and medium work:

> In determining the claimant's residual functional capacity, attention has been given to his allegations and subjective complaints of pain and other allegedly disabling symptoms, according to the guidelines set forth in sections 404.1529 and 416.929 of the Regulations and Social Security Ruling 96-7p. The claimant's statements about his pain and other symptoms will not alone establish disability. The Administrative Law Judge must consider all of the claimant's symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence, medical treatment history, information from other sources and the findings of State agency medical and psychological consultants about the existence of an individual's impairments. The undersigned considered the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's symptoms. Consideration has also been given to the precipitating or aggravating factors, type of medication, dosage, effectiveness and side effects, as well as the type of treatment, and other matters relating to the claimant's condition.
>
> The claimant claims an inability to work due largely to the after-effects of a distant [January 1989] closed head injury. The claimant reports episodically depressed mood, and diminished stamina, memory and concentration skills. The claimant avers staring-type spells that occur

in the evening and are typified by sweating, feeling numb and hot. The claimant claims to experience left foot pain stemming from a farm accident 20 years ago, as well as diminished finger dexterity. According to the claimant, his condition limits his ability to perform repetitive fine dexterity, deal with stressful circumstances, lift over 100 pounds, and work rapidly or around large crowds.

The undersigned considered whether the claimant's medically determinable impairments could reasonably be expected to cause the disabling symptomology alleged and concluded that they could. However, after careful consideration of the entire record, the undersigned finds that the claimant's testimony with respect to the extent and severity of his impairment and the resulting functional limitations to be somewhat overstated and inconsistent with the available evidence.

Specifically, no physician imposed ongoing work-preclusive limitations on the claimant's functioning. Indeed, certain treating and examining clinicians found that the claimant was capable of sustained work activity. The undersigned notes the results of intelligence and clinical evaluations that do not uncover profound pathology. While the claimant manifests some residuals from the 1989 head injury, the record discloses that these are relatively mild in nature. The claimant worked for a lengthy interval after this point in time, and neuropsychological test results suggest that the capabilities did not deteriorate over time, but actually improved. Evaluators consistently found that the claimant was alert, correctly oriented and in contact with reality, and that he exhibited no indication of psychotic thinking. The claimant's cognitive processing was coherent, rational and relevant. The overall record does not suggest or establish that the claimant lacks suitable memory, concentration, adaptive or interpersonal skills for vocational involvement. The claimant certainly demonstrates the potential for jobs that are routine, repetitive and concrete in nature.

The claimant has some modest difficulties associated with his left foot. He engages in no treatment for this condition, and clinicians observed him ambulate well without an assistive device. The record documents no other orthopedic or vascular disorder afflicting the claimant, and is devoid of any musculoskeletal and extremity abnormalities in terms of clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation, or significant atrophic changes. The claimant indicated that he had trouble with fine dexterity. Despite this, the claimant acknowledged that he was able to lift heavy objects and button clothing, and clinicians observed that he had normal wrist and hand mobility.

The claimant avers evening petit mal seizures that cause him to stare. The evidence does not substantiate a serious problem in this regard. The claimant does not suffer persistent motor disorganization or disequilibrium. The claimant is able to operate a motor vehicle on a recurring basis, and utilize yard power equipment.

The evidence in the case file simply does not support the claimant's contentions as to the frequency and severity of his alleged fatigue and lack of stamina. The claimant is able to

perform self-care tasks and other activities. The claimant sweeps floors, vacuums, and does limited household cleaning chores. The claimant drives, and completes yard work and basic household repairs. In addition, the claimant shops with others, visits with friends and family, and plays games with his children. Moreover, the claimant does limited reading and television watching, and goes out to eat. Further, the claimant maintains his aquariums, does some coaching for his youngster's teams, and odd jobs (e.g., painting, yard work) for neighbors (Exhibits 4E, 5E, 17F, p. 8 and testimony).

After considering all of the pertinent factors, the Administrative Law Judge concludes that the claimant's impairments preclude him from lifting or carrying over 50 pounds at one time or more than 25 pounds frequently; standing or walking more than two hours in an eight-hour workday; more than occasional fingering or fine manipulation; climbing ladders, ropes or scaffolds; more than occasional balancing, stooping, kneeling, crouching, crawling, use of foot controls with the lower left extremity or stair climbing.

In terms of limitations stemming from his mental impairment, the claimant has "mild" restrictions in activities of daily living (performs adaptive functions such as cleaning, shopping, caring appropriately for personal grooming and hygiene); "mild to moderate" difficulties in maintaining social functioning (communicates and interacts adequately with others, functions in social settings e.g., store/restaurant clerks, coaches, has meaningful interpersonal relationships); and "moderate" deficiencies of concentration, persistence or pace in completing tasks in a timely manner (operates a motor vehicle, no serious cognitive dysfunction in terms of awareness, orientation, simple calculations and fund of knowledge). There are "one or two" episodes of deterioration or decompensation in a work or work-like setting. The claimant's capacity to respond appropriately to work place changes; maintain concentration and attention for extended periods; and understand, remember and carry out detailed instructions are moderately limited. The claimant is relegated to performing simple unskilled low stress tasks that do not require high production rates or more than limited contact with the general public. Accordingly, the claimant has the residual functional capacity for a range of simple unskilled low stress light and medium work that does not involve high production rates, or more than limited contact with the general public.

(A.R. 23-25). The ALJ found that plaintiff was unable to perform his past relevant work. Plaintiff was 40 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. Plaintiff has a high school or high school equivalent education. The ALJ found that plaintiff did not have any transferable skills from past relevant work "and/or" the transferability of work skills was not an issue in this case. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC,

education, and work experience, the VE testified that there were approximately 30,000 jobs within the State of Michigan that plaintiff was capable of performing. The ALJ held that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 19-27).

**1.**

Plaintiff argues that the ALJ failed to consider "various factors" set forth in 20 C.F.R. § 404.1527(d) when the ALJ evaluated the opinions proffered by Dr. Osentoski and failed to accord adequate weight to Dr. Osentoski's opinion. (Statement of Errors, ¶ A). Upon review, I find that these arguments do not provide any basis for disturbing the Commissioner's decision.

Remarkably, plaintiff's attorney argues that the ALJ "could not consider" the factors set forth in 20 C.F.R. §404.1527(d) because the ALJ had "no treatment records to review to see Kevin's week to week psychiatric [sic] conditions that Dr. Osentoski was involved in treating to keep him in a mental state that allowed him to perform any work." (Plf. Brief at 11) (emphasis added). This argument requires little discussion, and actually serves to underscore the lack of medical evidence supporting the opinions proffered by Psychologist Osentoski. Plaintiff was represented by counsel at the December 10, 2002 hearing before the ALJ. The hearing transcript contains the following exchange occurred between the ALJ and plaintiff's attorney:

> ALJ: All right. Counsel, you've also had an opportunity to review the proposed exhibits contained in the case file. Is that correct?
>
> ATTY: Yes, sir.
>
> ALJ: Any objections to any of these exhibits being used in the consideration of your case?
>
> ATTY: No objection.

| | |
|---|---|
| ALJ: | Okay. I'm going to admit into the record the exhibits contained in the case file, which by way of summary are Exhibits 1A, 1B through 12B, 1D through 2D, 1E through 10E, 1F through 18F, and 1SSI through 10SSI. |
| | (Exhibits 1A through 18F and 1SSI through 10SSI, previously identified were received into evidence and made part of the record thereof.) |
| ALJ: | By the way, 17 and 18F are the new medical exhibits that were submitted prior to the hearing this afternoon. Do you have any additional exhibits, medical or otherwise, that you wish to introduce at this time? |
| ATTY: | No. |
| ALJ: | Are you aware of any other medical records relevant to the case that are still outstanding? |
| ATTY: | Not relevant that wouldn't be cumulative, no. |
| ALJ: | Okay. So we have an up-to-date – |
| ATTY: | Yes. |
| ALJ: | – pretty much complete medical file. . . . |

(A.R. 308-09). It was plaintiff's burden to produce medical records in support of his disability claim. It was not the ALJ's burden. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Cook v. Chater*, No. 95-2254, 1996 WL 338525, at * 1 (6th Cir. June 18, 1996) ("burden of providing a complete record rests with plaintiff"). The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because plaintiff had legal representation at the hearing. *See Trandifir v. Commissioner*, No. 00-3634, 2003 WL 245341, at * 2 (6th Cir. Jan. 31, 2003); *Rise v. Apfel*, No. 99-6164, 2000 WL 1562846, at * 2 (6th Cir. Oct. 13, 2000); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d

1048, 1051-52 (6th Cir. 1983). Plaintiff's assertion that the ALJ failed to develop the record is frivolous.

In a related and equally meritless argument, plaintiff's attorney argues that the ALJ "should have contacted the doctor to have the records forwarded to him in accordance with 20 C.F.R. § 404.1512(e)." Section 404.1512(e) states as follows:

> (e) *Recontacting medical sources*. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e); *see also* 20 C.F.R. § 416.912(e). The requirement for additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). The ALJ is not required to contact a treating physician where there is sufficient evidence in the medical records for the ALJ to make a decision. *See Moody v. Barnhart*, No. 03-3246, 2004 WL 2590826, at * 5 (3d Cir. Nov. 16, 2004). "An ALJ need recontact medical sources only when the evidence is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see Gallegos v. Barnhart*, No. 02-56261, 2003 WL 22417075, at * 1 (9th Cir. Oct. 9, 2003)("ALJ did

not have an obligation to seek clarification from [a physician] regarding possible inconsistencies in his report because there was sufficient evidence in the record to make a determination regarding disability."). The ALJ is not required to contact a treating physician upon finding that the treating physician's opinions are inconsistent with other evidence. *See Simmons v. Barnhart*, No. 02-1539-KAJ, 2004 WL 2323776, at * 6 (D. Del. Oct. 12, 2004)("Contrary to Plaintiff's argument, the ALJ is only required to further develop the record when 'the evidence we receive from your treating physician or psychologist or other medical source is *inadequate* for us to determine whether you are disabled.' 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)."). The regulation does not require an ALJ to give a treating physician a "second chance" to support his conclusions. *See Hodgkins v. Barnhart*, No. 03-179-P-H, 2004 WL 1896996, at * 3 (D. Me. Aug. 25, 2004). The ALJ need not recontact the physician where the evidence is adequate to the ALJ to discount a physician's opinion. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002); *Pinkerton v. Barnhart*, No. 03-1038-WEB, 2003 WL 23112348, at * 4 (D. Kan. Dec. 9, 2003).

Plaintiff's argument that, "The Administrative Law Judge dismiss[ed] the treating psychologist's opinion with a simple statement that *Dr. Osentoski's views are not supported objectively, are internally conflicting, and inconsistent with other substantial evidence in the case*" (Plf. Brief at 10), is not an accurate characterization of the record. The ALJ's opinion addressed Psychologist Osentoski's opinions at length, and the ALJ carefully explained his reasons for giving them minimal weight:

> In reaching this conclusion, the undersigned considered the December 2002 Head Injury Questionnaire completed by Dr. Osentoski at counsel's request (Exhibit 18F). Dr. Osentoski listed restrictions that were incompatible with competitive employment, including the claim that the claimant would be absent from work more than four days a month. The doctor suggested that the claimant was unable to meet competitive standards in the areas of remembering work-like procedures, sustaining a routi[ne] without supervision, completing

-10-

> a workday without interruption from psychologically based symptoms, etc.  The doctor further indicated that the claimant had a GAF score of 40, indicating major symptoms.
>
> The undersigned finds that the degree of limitation ascribed to the claimant by Dr. Osentoski to be contraindicated by substantial evidence of record.  It is noteworthy in that in numerous instances on the assessment Dr. Osentoski deferred to physician Lewandowski (Exhibit 18F pp. 2, 3, 4, 5).  As discussed previously, treating physician Lewandowski concluded that the claimant was capable of regular an sustained work activity, and only expressed reservations regarding his ability to engage in overtime hours, or work other than on the first shift.  Indeed, Dr. Osentoski apparently concurred with this view, as she sent these restrictions (i.e., first shift only, no overtime) to the claimant's employer (*See* Exhibit 9F p.1).  Dr. Osentoski's own contemporary reports do not list serious clinical abnormalities, and in fact, the doctor suggested that the claimant's prognosis was good (Exhibit 10F).  As Dr. Osentoski's views are not well supported objectively, are internally conflicting, and inconsistent with other substantial evidence in the case file, they are accorded minimal weight.

(A.R. 25).  The ALJ's finding that "the December 2002 Head Injury Questionnaire completed by Dr. Osentoski at counsel's request (Exhibit 18F) "ascribed to the plaintiff a degree of limitation contraindicated [ ] by the record" is supported by more than substantial evidence.  The ALJ's decision to give minimal weight to the opinions Psychologist Osentoski expressed in the December 2002 questionnaire was entirely appropriate.

Plaintiff claimed a February 2, 2001 onset of disability.  The record shows that plaintiff was involved in a car accident in January of 1989, and he sustained a closed head injury.  Plaintiff submitted medical records from 1989 regarding the extensive treatment and therapy he received following the accident. (A.R. 121-90).  Approximately five years later, on March 12, 1994, a neuropsychologist and clinical psychologist, Alan G. Lewandowski, Ph.D., examined plaintiff.  Dr. Lewandowski responded to plaintiff's request that Dr. Lewandowski write a letter to plaintiff's employer regarding plaintiff's ability to perform overtime work.  Dr. Lewandowski wrote that plaintiff's fatigue was variable, and that it "should not preclude [plaintiff] from engaging in overtime employment." (A.R. 214).  Dr. Lewandowski stated, "In my opinion, there is no particular reason

why Mr. Nichols cannot perform in an overtime capacity. He is likely an adequate judge of his alertness and fatigue." (A.R. 214). More than five years later, on September 14, 1999, Dr. Lewandowski completed a neuropsychological examination. Plaintiff's IQ scores placed him in the low average range of intellectual functioning. Plaintiff's neuropsychological functioning was classified as impaired, reflecting plaintiff's difficulty with "immediate recall and recapitulation of overlearned information for both verbally and visually mediated material." Plaintiff's psychological functioning was also classified as impaired. "A comparative analysis of the patient's past two examinations suggests no significant changes in depression but improvements in the area of adjustment, in particular through decreased somatization. In addition, internalized and externalized conflict has been reduced, as has agitation." (A.R. 211-13).

On January 24, 2001, plaintiff received an independent medical evaluation conducted by Charles E. Syrjamaki, M.D. (A.R. 194-96). Dr. Syrjamaki found that plaintiff was "in excellent physical condition." Plaintiff's musculoskeletal examination returned essentially normal results with the exception of plaintiff's left foot. Dr. Syrjamaki made the following findings:

> Neurologic: Mental status testing was normal. He did have some mild deficiency noted of his instant recall. However, he was alert and oriented, knew presidents, recent events, and was a good historian. Otherwise, the patient had normal neurological examination with normal motor, sensory, and reflexes. His gait appeared to be normal. His balance, which he complained about, appeared to be reasonably normal as well.

(A.R. 195). Dr. Syrjamaki stated, "I would not put him on any restrictions. I believe that the type of employment that he has been doing (i.e. his present job) is appropriate. . . . I do not believe that there should be any problems doing his job, and he should not have any limitations regarding his employment. He is doing well at this time and can work without restrictions." (A.R. 195).

Plaintiff claimed a February 27, 2001 onset of disability, and the first document appearing in the record dated after the alleged onset of disability is a February 27, 2001 letter from Kalpesh K. Panchal, M.D. In this letter, Dr. Panchal expressed agreement with Dr. Lewandowski's opinion that plaintiff "should remain on first shift for the highest level of productivity." (A.R. 199).

On March 28, 2001, Psychologist Osentoski drafted a letter stating that plaintiff *was* capable of performing the requirements of employment with accommodations:

> Mr. Nichols has been seeing me intermittently for depression. He experienced a closed head injury on January 29, 1989. His treating neuropsychologist, Dr. Alan Lewandowski, has recommended that Mr. Nichols continue on first shift and continue with therapy for his depression. Mr. Nichols has been stable and functioning well until February 2, 2001 when he was told by his employer that he would have to change shifts and job positions. At that time he came back to therapy due to escalating depression accompanied by anxiety. He was then placed on stress leave. Further concerns have surrounded the fact that administration and human resources have denied ever receiving notification from Dr. Lewandowski on Mr. Nichols['s] restrictions, I then personally faxed them another copy of his letter. I am concerned that Mr. Nichols has been an employee of this company for seventeen years and there have been no prior complaints of his physical restrictions. The questions then arises as to why his employer is unable to make accommodations for his physical disability now.

(A.R. 201). The record contains a handwritten note from Psychologist Ostenoski stating, "Please extend Kevin Nichol's [sic] stress leave until 5-1-01." (A.R. 202).

On June 7, 2001, Psychologist Osentoski signed a Michigan Disability Determination Service form. She stated that she was a licensed psychologist. (A.R. 203-08). Osentoski indicated that she had provided psychotherapy services for plaintiff on an intermittent basis. She related that plaintiff did not have any psychosis, hallucinations or delusions. Plaintiff was oriented in all three spheres. Based on her own observations and statements she had obtained from plaintiff's wife, Psychologist Osentoski described plaintiff's social functioning as, "well mannered, quiet –gets along well with family of origin, children and wife." She also wrote, "Mr. Nichols reports [a] good relationship with co-workers" and that he "had [a] good relationship with super[visory] staff until

placed on stress leave." (A.R. 204). Plaintiff related a history of daily marijuana use until his car accident, and occasional marijuana use thereafter. Plaintiff stated that he felt that use of marijuana helped his anxiety. Plaintiff stated that he had not used marijuana since February 2001. Psychologist Osentoski indicated that plaintiff was always on time for his appointments with her. She indicated that plaintiff did not have any psychosis, hallucinations or delusions. Plaintiff was capable of performing repetitive tasks. (A.R. 206). Psychologist Osentoski offered the following diagnosis: "Axis I, 309.81 post-traumatic stress disorder" and "Axis III, seizures, calcium deposit & arthritis in L[eft] foot, closed head injury." She stated that plaintiff's prognosis was poor with his current job, but with treatment and training plaintiff had a "good prognosis for [a] new job." (A.R. 208).

Dr. Lewandowski examined plaintiff on June 11, 2001. He reported that plaintiff was twelve years status-post traumatic brain injury (TBI) in 1989. Dr. Lewandowski stated that plaintiff's impairments did not preclude him from performing overtime work. Plaintiff's ability to work overtime hours was limited by his decreased cognitive stamina and endurance. (A.R. 249). Six months later, Dr. Lewandowski reiterated that plaintiff's impairments did not preclude overtime work. (A.R. 253).

July 25, 2002 progress notes show that plaintiff's wife's related that plaintiff was "active in numerous home-based jobs for neighbors, such as painting." (A.R. 256).

On December 8, 2002, two days before plaintiff's hearing before the ALJ, Psychologist Osentoski completed a "Head Injury Questionnaire" provided by plaintiff's attorney. (A.R. 259-262). Psychologist Osentoski described her treatment of plaintiff as being supportive therapy, working with support resources, and focusing on the future. (A.R. 258). Although

Psychologist Osentoski wrote that plaintiff's "new medications" caused poor motor coordination and lack of energy (A.R. 258), Osentoski never prescribed any of plaintiff's medications. (A.R. 327). On pages 2, 3, 4, and 5 of the questionnaire, Osentoski deferred to Dr. Lewandowski. (A.R. 259-62). Osentoski did not complete the portion of questionnaire regarding plaintiff's restriction of activities of daily living, social functioning, deficiencies of concentration, persistence or pace, and episodes of decompensation. (A.R. 261). Plaintiff's abilities to remember work-like procedures, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in routine work setting, and deal with normal stress, were placed in a category entitled "unable to meet competitive standards." Osentoski wrote that plaintiff would "constantly" experience pain, fatigue or other symptoms severe enough to interfere with attention and concentration. (A.R. 262). She indicated that plaintiff's ability to tolerate work stress was dependent on the job and the support system at the job. (A.R. 262). Paragraph 11 of the questionnaire asked, "On average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work?" Osentoski responded by marking "more than four days per month," followed by a handwritten notation "depend[s] on job, energy level." (A.R. 261). Psychologist Osentoski offered the following diagnosis:

>     Axis I:      Initial Dx 309.81 PTSD, now also 296.23 & 300.02
>     Axis II:     Deferred
>     Axis III:    Closed head injury, ankle
>     Axis IV:     Step son acting out, financial problems, marital problems
>     Axis V:      Current GAF: Vacillates
>                  Highest GAF Past Year: 40

(A.R. 258). Psychologist Osentoski did not support the opinions in her questionnaire responses with test results or other medical records.

Plaintiff testified at his December 10, 2002 hearing that he drives every day. Roughly once a week, plaintiff drives distances of up to 30 miles. (A.R. 311). He testified that he stopped working in February 2001 when his Psychologist Osentoski placed him on "stress leave" and that he had never returned to work. (A.R. 317-18). Plaintiff testified that he continued to perform jobs like mowing lawns. (A.R. 320). Plaintiff testified that Dr. Bell, a colleague of Dr. Lewandowski, prescribed his medications. (A.R. 327). Plaintiff testified that he could bench press approximately 190 pounds and carry 100 pounds. (A.R. 329). Plaintiff stated that he visited with a friend approximately three days a week. (A.R. 331). Plaintiff testified that he vacuumed, swept floors, and performed yard work. (A.R. 334). Plaintiff stated that once a week he went out to eat. (A.R. 335). Plaintiff described his hobby of keeping fish in two aquariums. Plaintiff testified that he was responsible for maintaining the tanks and feeding the fish. (A.R. 335-36).

On December 28, 2002, plaintiff received a consultative psychological examination by Joseph B. Klass. Plaintiff described the yard work as a hobby. Psychologist Klass described plaintiff's manner as friendly and cooperative. Klass offered the following diagnosis: Axis I, 294.1 dementia due to head trauma; Axis II, no diagnosis; Axis III, closed head injury, deformed left foot, arthritis in left foot and back; Axis IV, occupational problems; Axis V, current GAF 65, past year 65. (A.R. 263-72).

The record summarized herein shows that the ALJ complied with 20 C.F.R § 404.1527(d). The medical opinions and diagnosis of treating physicians are not entitled to great weight where they are conclusory, but are entitled to such weight where supported by detailed

objective criteria and documentation. *See Jones v. Commissioner*, 336 F.3d at 477; *Buxton v. Halter*, 246 F.3d at 773; *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). I find that the ALJ was well aware of these standards and properly applied the treating physician rule. The ALJ's opinion (A.R. 25) gave "good reasons" for giving minimal weight to the opinions offered by Psychologist Osentoski. *See Wilson v. Commissioner*, 378 F.3d 541-545-46 (6th Cir. 2004). The ALJ's finding that Psychologist Osentoski's opinions were entitled to minimal weight because they were contrary to other evidence in the record (including the opinion of Dr. Lewandowski), were not well supported objectively, and internally conflicting, and inconsistent is supported by more than substantial evidence.

**2.**

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ should have found that plaintiff was "unable to perform the basic mental demands of unskilled work as described in SSR 85-15." (Statement of Errors, ¶ B). The supporting argument in plaintiff's brief consists of a lengthy excerpt from SSR 85-15 and an excerpt of an Iowa district court decision. (Plf. Brief at 12-14). The reason plaintiff's attorney attempted to rely upon authority from outside the Sixth Circuit is patent. The United States Court of Appeals for the Sixth Circuit has repeatedly held that SSR 85-15 does not apply where, as here, the plaintiff suffers from both exertional and non-exertional impairments. *See Hicks v. Commissioner*, No. 03-5507, 2004 WL 1687945, at * 7 (6th Cir. July 27, 2004) (Observing that the SSR 85-15's title itself ("*Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Non-Exertional Impairments*") "makes clear [the ruling] applies to solely nonexertional impairments."); *Harpole v. Chater*, No. 96-5702, 1997 WL 306775, at * 2 (6th Cir. June 5, 1997) ("We agree with

the Commissioner that SSR 85-15 has no application to claimant's case because claimant suffers from both exertional and non-exertional impairments."); *Doneworth v. Shalala*, No. 94-4290, 1996 WL 26922, at * 4 (6th Cir. Jan. 23, 1996); *accord Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). I find that plaintiff's argument does not provide any basis on which to disturb the Commissioner's decision.

**3.**

Plaintiff's third argument is that the ALJ's assessment of plaintiff's residual functional capacity was inadequate. (Statement of Errors, ¶ C). I find this argument is meritless. Social Security Ruling 96-8p states that RFC is an administrative determination of the most, not the least, the claimant can on a regular and continuing basis despite his impairments:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities. (See SSR 96-4p, "Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations.") Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. [FN2] RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

*Policy Interpretation & Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted at 1996 WL 374184, *2 (S.S.A. July 2, 1996)). Plaintiff argues that the ALJ's opinion should be overturned because the ALJ failed to provide an adequate "narrative discussion" to support his RFC determination under SSR 96-8p (Plf. Brief at 15-16) is patently meritless. SSR 96-8p states:

-18-

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, *7; *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ's detailed analysis of plaintiff's RFC, reproduced on pages 4 through 6 of this report and recommendation, completely undermines plaintiff's argument that ALJ failed to comply with the "narrative discussion" requirements of SSR 96-8p.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  June 29, 2005            /s/  Joseph G. Scoville
                                 United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).